United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Juan Reyes and Haday Reyes, ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 16-23978-Civ-Scola |
| American Security Insurance Co., ) | |
| Defendant. ) | |

**Order on Motion for Summary Judgment**

This matter is before the Court on the Defendant American Security Insurance Company's ("ASIC") motion for summary judgment (ECF No. 22). The Plaintiffs Juan and Haday Reyes filed a response (ECF No. 25), and ASIC filed a reply (ECF No. 30). Having reviewed the Motion, all supporting and opposing submissions, the record in this case, and the relevant legal authorities, for the reasons that follow, the Court **grants** the motion for summary judgment (**ECF No. 22**).

   **1. Introduction**
This case arises from damage to the Plaintiffs' home as a result of alleged sinkhole activity. The present dispute concerns whether the damage can be attributed to sinkhole activity, and is therefore covered by the Reyes's insurance policy issued by ASIC. ASIC seeks summary judgment as to the Reyes's single claim for breach of contract, on the basis that the record evidence demonstrates that sinkhole activity has been eliminated as a cause of loss at the Reyes's property. Before addressing the issue, the Court will set out the undisputed material facts and the parties' arguments for and against summary judgment.

   **2. Statement of Facts**
The Reyeses own their home located at 3098 NW 4th Terrace, Miami, Florida 33125 (the "Property"), which was built in 1955. *See* Defendant's Statement of Material Facts (ECF No. 21), ¶¶ 1-2 ("DSMF"); Plaintiffs' Response to Defendant's Statement of Material Facts (ECF No. 26), ¶ 2 ("PSMF").[1] ASIC

---

[1] This District's Local Rule 56.1(b) requires the movant's facts to be controverted by reference to record evidence. Thus, where the Plaintiffs have responded to ASIC's Statement of Material Facts by merely asserting that the fact is "disputed," without citing any record evidence to create a genuine issue of material fact, the Court has deemed such facts admitted. This result is consistent with the Supreme Court's directive that the nonmoving party cannot rest on its laurels with "mere allegations or denials," but instead must "go beyond the pleadings and present competent evidence

issued a lender-placed insurance policy, which includes a Sinkhole Loss Coverage Endorsement. (DSMF ¶¶ 3, 7.) According to the policy, "'[s]inkhole activity' means settlement or systematic weakening of the earth supporting such property. The settlement or systematic weakening must result from movement or raveling of soils, sediments, or rock material into subterranean voids created by the effect of water on limestone or similar rock formations." (*Id.* ¶ 7 (quoting (ECF No. 20-1 at 17)).) Furthermore, "sinkhole loss" is defined under the policy as "actual physical damage [a]rising out of, or [c]aused by '[s]inkhole activity.'" (*Id.*) The Reyeses reported a sinkhole claim with a date of loss on May 2, 2013 to ASIC on November 4, 2013. (*Id.* at 8). As a result of the claim, ASIC engaged the services of Central Florida Testing Laboratories, Inc. ("CFTL"), to perform a geotechnical analysis of the Reyes's property in order to determine whether sinkhole activity was a cause of the damage observed. (*Id.* ¶ 9). Following its investigation, CFTL issued two reports—a Structural Inspection report dated January 10, 2014 (ECF No. 20-2 at 5-31), and a Comprehensive Geotechnical Investigation report dated March 24, 2014 (ECF No. 20-2 at 32-70).

Ultimately, CFTL concluded that the damage to the Reyes's residence was as a result of "atypical construction of the home and its supporting foundation, wood destroying organism damage to the floor framing, as well as the consolidation of the buried debris encountered and the erratic heterogeneous fill materials placed on the site." (*Id.* at 39; DSMF ¶ 15) Significantly, CTFL also concluded that

> within the same reasonable professional probability, it is our opinion that the damage observed was <u>not</u> the result of sinkhole activity. The SPT [standard penetration test] borings completed at the site all found similar geologically stable soil profiles, beneath buried debris and erratic fill material, with no cavities, zones of raveled soils, or systematic weakening of the soil profile related to sinkhole activity.

(ECF No. 20-2 at 39; DSMF ¶¶ 14, 16.) As such, there was no evidence of sinkhole activity found beneath the Property. (ECF No. 20-2 at 40; DSMF ¶ 17.) Based upon CTFL's findings and conclusions, ASIC notified the Plaintiffs by

---

designating specific facts showing that there is a genuine issue for trial*.*" *See United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court notes that the Plaintiffs respond to two paragraphs only of ASIC's Statement, and do so in a conclusory fashion.

letter dated April 9, 2014 that their claim for sinkhole loss would be denied. (DSMF ¶ 18.)

### 3. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. North Carolina*, ─── U.S. ───, ───, 130 S. Ct. 2295, 2308, 176 L. Ed. 2d 1070 (2010) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is particularly suited to cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court." *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.*, 2011 WL 5877505, at *4 (M.D. Fla. Nov. 23, 2011). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x at 794 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [ ] must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586. "Likewise, a plaintiff cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 448 F. App'x 17, 19 (11th Cir. 2011).

### 4. Analysis

ASIC moves for summary judgment on the basis that CTFL's reports demonstrate that the damage to the Property did not occur as a result of sinkhole activity. In response, the Plaintiffs provide the declaration of Sonny Gulati, P.E. (ECF No. 23 at 3-4) and a report by Florida Testing & Environmental, Inc. ("FTE") (ECF No. 23 at 5-27), in which Mr. Gulati finds that sinkhole activity cannot be ruled out as the cause of the damage at the Property. Thus, the Plaintiffs argue that a genuine issue of material fact

remains as to whether sinkhole activity caused the damage. However, under the circumstances in this case, the Plaintiffs fail to make a sufficient showing of specific facts in the record demonstrating that there is a genuine issue for trial.

### A. Timeliness

ASIC points out that the Plaintiffs disclosed Mr. Gulati and provided the FTE report only in response to the instant motion. The Plaintiffs do not dispute their failure to properly and timely disclose Mr. Gulati as an expert witness according to this Court's scheduling order (ECF No. 9). As such, the Plaintiffs have violated Rules 26 and 37 of the Federal Rules of Civil Procedure with no explanation whatsoever. In pertinent part, Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

According to the Scheduling Order, the discovery deadline and deadline to exchange expert witness summaries/reports was May 30, 2017. Only after ASIC filed the instant motion on June 13, 2017, did the Plaintiffs identify Mr. Gulati in response on June 29, 2017. In fact, the Plaintiffs have effectively conceded that no person conducted testing on their behalf until FTE's inspection in response to ASIC's motion. (*See* ECF No. 20-3 at 6; DSMF ¶ 28.) Therefore, the Court will not consider Mr. Gulati's declaration, or FTE's report. *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008). The record is otherwise devoid of any facts indicating that there is a triable issue in this case. The Plaintiffs may not now attempt to create an issue of fact in order to defeat summary judgment, especially where their attempt violates the Court's Scheduling Order and the Federal Rules of Civil Procedure without explanation. On this basis alone, the instant motion is due to be granted.

### B. The Reports

Nevertheless, even if the Court were to consider the evidence presented in support of the Plaintiffs' argument, the FTE report and Mr. Gulati's findings are insufficient, as they are based upon a limited inspection conducted on June 22, 2017, more than three years after ASIC's investigations and testing, and almost four years after the claimed loss.

In contrast, the CFTL reports provide specific detailed findings upon which the conclusion that the damage to the Property did not occur as a result of sinkhole activity, which the Plaintiffs have only responded to in conclusory fashion. The results in the CFTL Structural Inspection report include findings based upon an interview with the homeowner and photographs of the reported

damage, a visual site inspection, and a relative elevation survey to measure interior elevation differential throughout the floor of the home. (ECF No. 20-2 at 5.) The results reported in the Comprehensive Geotechnical Investigation report include findings based upon the following tasks and tests:

- Review available published information from the Natural Resource Conservation service (NRCS), Florida Department of Transportation Aerial Look-up system, United States Geological Survey (USGS), Florida Geological Survey (FGS) and the Dade County Property Appraiser[']s Office.
- Conduct a geophysical study of the property using ground penetrating radar (GPR) to document the lateral continuity of subsurface strata and to identify any anomalies consistent with sinkhole activity if present.
- Conduct scans of the elevated concrete floors using high frequency ground penetrating radar (GPR) equipment to identify the presence and location of steel reinforcement.
- Complete hand auger borings around the perimeter of the home to better characterize the shallow soil conditions and to identify any deleterious materials such as debris, organic soils or expansive clays that may be present.
- Complete test pit excavations to expose the foundation of the house and enable us to measure the dimensions and depth of embedment.
- Complete standard penetration test (SPT) borings to determine the stability of the soil profile relative to the possible presence of sinkhole activity.

(ECF No. 20-2 at 33-34).

The FTE report is based upon a review of CFTL's Structural Inspection report only, a visual site inspection, and a floor elevation survey conducted by FTE on June 22, 2017. (ECF No. 23 at 5-7.) The FTE report makes no reference to the detailed findings contained in CFTL's Comprehensive Geotechnical Investigation report—nor is there any evidence that FTE conducted any similar type of testing—and concludes upon the limited scope of FTE's inspection, that "the floor system has undergone excessive overall differential settlement," and that "adverse impact due to sinkhole activity at the subject residence cannot be ruled out." (*Id.* at 7-8.) Thus, FTE's disagreement with CFTL's conclusions is

not based upon a review of the relevant data, and the FTE report does not provide competent evidence of specific facts to indicate that a triable issue exists.

### 5. Conclusion

As explained above, the Court concludes that ASIC is entitled to summary judgment on the Plaintiffs' claim, as they have failed to provide competent evidence to indicate that a triable issue exists as to the whether the damage to the Property occurred as a result of sinkhole activity.

Accordingly, it is **ORDERED and ADJUGDED** that ASIC's motion, (**ECF No. 22**) is **granted**. Any pending motions are **denied as moot**, and all remaining deadlines are **terminated**. The Clerk of Court shall **close** this case.

**Done and ordered**, at Miami, Florida, on September 21, 2017.

Robert N. Scola, Jr.
United States District Judge